IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MERCEDES TORRES-MEDINA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTINE E. WORMUTH IN HER OFFICIAL CAPACITY AS SECRETARY OF THE ARMY, THE DEPARTMENT OF THE ARMY, AND THE UNITED STATES OF AMERICA,<br><br>Defendants. | CIV. NO. 21-1362 (SCC) |

## OPINION AND ORDER

Mercedes Torres-Medina sued the Secretary of the Army, Department of the Army, and United States of America, alleging that they discriminated against her because of her disability and retaliated against her for filing complaints against them. Docket No. 6. The government has moved to dismiss her complaint under Federal Rule of Civil Procedural 12(b)(6). Docket No. 18. We grant its motion in part and deny it in part.

# I.  Motion to Dismiss

To survive a Rule 12(b)(6) motion, a plaintiff must plead "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 16 F.4th 538, 546 (1st Cir. 2021) (quoting *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)). This means that the complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc). In evaluating whether the plaintiff has cleared this threshold, "we accept as true all well-pleaded facts . . . and draw all reasonable inferences therefrom in the [plaintiff]'s favor." *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 34 (1st Cir. 2022) (quoting *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021)). But we do not credit legal conclusions nor "factual allegations that are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture.'" *Legal Sea Foods*, 36 F.4th at 34 (quoting *Tambone*, 597 F.3d at 442).

### a. Allegations

From 1995 to 2020, Torres worked for the Army as a civilian. Docket No. 6 ¶ 13. During that time, she filed several complaints with the Equal Employment Opportunity Commission ("EEOC") for discrimination, retaliation, and harassment. *Id.* ¶ 19. She filed the first in 2008, the second in 2018, and the third in 2019. *Id.* ¶¶ 19–21. Up until her last year, she received good performance evaluations. *Id.* ¶ 27. She suffers from asthma, arthritis, insomnia, post-traumatic stress disorder ("PTSD"), depression, and high blood pressure. *Id.* ¶ 12. And because of two strokes, she has no strength nor eyesight on the left side of her body. *Id.*

Now to the allegations that led to this lawsuit. The Chief Executive Officer ("CXO") of the Mission Support Command ("MSC") where Torres worked was having an affair with a Senior Budget Analyst. *Id.* ¶¶ 22–23. Torres knew about the affair. *Id.* ¶ 24. And the lovers believed that she revealed it. *Id.* ¶ 26. In March 2019, the CXO transferred Torres to an office where she would be supervised by people who had been involved in her prior and pending EEOC

complaints. *Id.* ¶ 29. Though she asked to be assigned to a different supervisor (as a "reasonable accommodation"), the MSC Management denied her request. *Id.* ¶ 30. The MSC Management also assigned her new performance evaluators. *Id.* ¶ 31. They included the CXO and someone else who was involved in her prior and pending EEOC complaints. *Id.* From April 2019 to March 2020, they gave her poor performance evaluations. *Id.* ¶ 32. But they did not give her any coaching to correct her performance. *Id.* ¶ 33. And their evaluations, albeit indirectly, referred to her EEOC complaints as one of the reasons for her poor performance. *Id.* ¶ 34.

The MSC Management did several other things to Torres during 2019 and 2020. Of note, it issued personnel materials that listed different people as her supervisor, rater, and leave approver and did not list her in any position; supervised her while on military duty; asked her to submit medical documents that she had already submitted; did not copy her on an email that would have informed her that the building where she worked had been freshly painted, causing her to become sick when she arrived; gave her incorrect

contact information for Freedom of Information Act requests; told people to stay away from her because it was "already dealing with her"; and refused to give her copies of her personnel documents. *Id.* ¶ 35. These things, at least the ones that occurred beforehand, caused her to suffer a PTSD crisis, which required medical treatment. *Id.* ¶ 36. During this crisis, she said that she would kill one of the MSC managers if she saw him. *Id.* ¶ 37.

In October 2019, the MSC Management put her on leave pending an investigation into her threat. *Id.* ¶ 38. In November, the CXO gave her a proposed suspension, which she served in December. *Id.* ¶ 39. While serving that suspension, the MSC Management carried out another investigation based on a false complaint that the CXO's lover had filed against her. *Id.* ¶ 40. This complaint accused her of using indecent language and abusing military personnel for personal errands. *Id.* The CXO's close friend conducted this investigation and, throughout it, treated Torres unfairly. *Id.* ¶ 43. Based on this investigation's results, the CXO recommended that she be fired. *Id.* ¶ 46. And she was. *Id.* ¶ 47.

### b.  Analysis

We see five claims in Torres's complaint: discrimination, failure to accommodate, retaliation, and hostile work environment under the Rehabilitation Act and retaliation under Title VII of the Civil Rights Act.

#### i.  Rehabilitation Act Claims

The same standards apply to claims brought under the Rehabilitation Act and Americans with Disabilities Act. *Calero-Cerezo v. U.S. Dep't of Just.*, 355 F.3d 6, 11 n.1 (1st Cir. 2004). So our analysis will use caselaw from both. To state a plausible discrimination claim under the Rehabilitation Act, Torres must show that "(1) she was disabled . . . ; (2) she was qualified to perform the essential functions of the job, either with or without a reasonable accommodation; and (3) the employer took adverse action against her because of the disability." *Rios-Jiménez v. Sec'y of Veterans Affs.*, 520 F.3d 31, 41 (1st Cir. 2008); *see also Lesley v. Chie*, 250 F.3d 47, 53 (1st Cir. 2001) (stating the causation element requires that adverse action be taken against her "solely by reason of her . . . disability"). For her failure to accommodate claim, she must

prove these first two elements and that "the employer, despite knowing about the disability, did not acquiesce to a request for a reasonable accommodation." *Rios-Jiménez*, 520 F.3d at 41. But she need not establish every element to prove that each claim is plausible. *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013). We use these elements merely as "a prism to shed light upon the plausibility of [each] claim." *Id.*

Even if Torres is disabled and qualified, she has not shown that the MSC Management took any adverse action against her because of her disability. A person is disabled if she has "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or is "regarded as having such an impairment." *Mancini v. City of Providence*, 909 F.3d 32, 39 (1st Cir. 2018). And a physical impairment is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems." *Id.* (citing 29 C.F.R. § 1630.2(h)). Torres is disabled. For she says that her numerous physical ailments have left her without strength and eyesight on her left side and with difficulty standing,

walking, and bending. Next, a person is qualified for her job if she can perform its essential functions with or without a reasonable accommodation. *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 25 (1st Cir. 2001). She alleges that she worked for the Army for over twenty-five years and that she received good or excellent performance evaluations until her last year there when, she says, the MSC Management maliciously gave her bad performance evaluations. Though she does not list the essential functions of her job nor explain how she was able to perform them, we can reasonably infer from her decades' worth of positive evaluations that she was able to do so. Finally, she must show that the MSC Management took adverse actions against her because of her disability.

To be sure, termination is an adverse action. *Valle-Arce v. P.R. Ports Auth.*, 651 F.3d 190, 198 (1st Cir. 2011); *see also Cherkaoui v. City of Quincy*, 877 F.3d 14, 25 (1st Cir. 2017) ("To determine if an employment action is in fact 'adverse,' we look for whether it 'has materially changed the conditions of plaintiff's employ.'" (quoting *Gu v. Bos. Police Dep't*, 312 F.3d 6, 14 (1st Cir. 2002))). But there are no allegations that would

support a reasonable inference that the MSC Management fired Torres—or did anything else to her, for that matter—because of her disability. One way a plaintiff may prove that adverse actions are connected to her disability is by showing that her employer frequently mentioned, harassed, or ridiculed her because of her disability. *Quiles-Quiles v. Henderson*, 439 F.3d 1, 8 (1st Cir. 2006). At bottom, there must be some indication that the employer behaved as it did based on discriminatory animus. Here, there is none. She alleges that the CXO treated her poorly because he believed that she had revealed his affair and that another MSC manager treated her poorly because she had filed EEOC complaints against him. And though she says that they indirectly mentioned her EEOC activity in her performance evaluations, that is not rooted in discriminatory animus—that is rooted in retaliatory animus. In other words, the factual matter in her complaint indicates that they treated her poorly because she filed formal complaints against them, not because she is disabled. Moreover, the only motivations that can be attributed to the CXO's lover's decision to file the false complaint against her

are retribution for revealing the affair or pressure from the CXO. Either way, the motivation has nothing to do with her disability.

Torres tries to save this claim by pointing to her allegations that the MSC Management took adverse actions against her because of her disability. Docket No. 25, pgs. 13–14. But we disregard conclusory allegations, like those, that are devoid of factual support. *See Tambone*, 597 F.3d at 442; *Legal Sea Foods*, 36 F.4th at 34. Because she has failed to state a plausible discrimination claim under the Rehabilitation Act, we dismiss that claim without prejudice.

We turn to Torres's failure to accommodate claim. Recall that she must prove that she is disabled and able to perform the essential functions of her job with or without a reasonable accommodation and that her employer, despite knowing about her disability, nonetheless denied her request for a reasonable accommodation. *Rios-Jiménez*, 520 F.3d at 41. She has satisfied the first two elements. As to the third, she alleges that the MSC Management knew about her disability and should have granted her request to reassign her to her

prior supervisor. The government frames her request as asking for a different supervisor, but Torres insists that she was, instead, asking for her old supervisor back. Docket No. 25, pg. 18.[1] There is no daylight between how the parties frame her request. For her prior supervisor was a different person than the one supervising her at the time.

To show that her employer denied her request for a reasonable accommodation, Torres must show not only that her requested accommodation (*i.e.*, changing supervisors) "would enable her to perform the essential functions of her job, but also that, at least on the face of things, it is feasible for the employer under the circumstances." *Reed v. Lepage Bakeries, Inc.*, 244 F.3d 254, 259 (1st Cir. 2001). The request

---

1. Torres adds in her opposition that she had also requested to work remotely, which the MSC Management denied. Docket No. 25, pg. 18. But that is not alleged in her complaint. So we disregard it. *See, e.g.*, *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)." (quoting 2 MOORE'S FEDERAL PRACTICE § 12.34(2))).

itself "must be sufficiently direct and specific, and it must explain how the accommodation is linked to [the employee]'s disability." *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012). That is, the employee is obligated to give the employer notice of a "causal connection between the major life activity that is limited and the accommodation sought." *Id.* Our inquiry for whether Torres satisfied this obligation is whether the MSC Management "reasonably should have known that the reason for [her] request was her disability." *Freadman v. Metro Prop. & Cas. Co.*, 484 F.3d 91, 103 (1st Cir. 2007). The MSC Management asked her for medical documentation regarding her requested accommodation, so we can reasonably infer that it had notice that her request was linked to her disability. And because she suffers from depression and PTSD, we can reasonably infer that placing her under the supervision of someone who had been involved in her prior and pending EEOC complaints might distress her to the point where she would struggle to perform the essential functions of her job and that the situation might be remedied by reassigning her to her prior supervisor. As to the feasibility

of her request, because the supervisor that she requested had been her supervisor previously, her request is—at this stage of the proceedings—facially feasible. Thus, her failure to accommodate claim survives the government's motion to dismiss. The government suggests that a request to change supervisors is per se unreasonable and left to the employer's discretion. Docket No. 18, pg. 28. But that is not true: "The reasonableness of any proposed accommodation, including its feasibility, must be assessed on a case-by-case basis." *Trahan v. Wayfair Me., LLC*, 957 F.3d 54, 65 (1st Cir. 2020); *see also Kennedy v. Dresser Rand Co.*, 193 F.3d 120, 122–23 (2d Cir. 1999) ("A per se rule stating that the replacement of a supervisor can never be a reasonable accommodation is . . . inconsistent with our ADA case law.").

For her retaliation claim to survive as well, Torres must show that she "engaged in protected conduct," was "subjected to an adverse action," and that "there was a causal connection between the protected conduct and the adverse action." *Lebrón v. Puerto Rico*, 770 F.3d 25, 31 (1st Cir. 2014). Protected conduct includes filing an EEOC complaint that

opposes an action that the Rehabilitation Act prohibits, such as disability discrimination. *Quiles-Quiles*, 439 F.3d at 8 ("The Rehabilitation Act prohibits retaliation against employees for complaining about violations of the Act."). And in this context, an adverse action "is one that might well dissuade a reasonable person from making or supporting a charge of discrimination." *D.B. v. Esposito*, 675 F.3d 26, 41 (1st Cir. 2012). Firing someone obviously fits the bill. A causal connection between the protected conduct and adverse action may be shown by temporal proximity, *Freadman*, 484 F.3d at 100–01, "the historical background of the . . . decision," "the specific sequence of events leading up to the challenged decision," "departures from the normal procedural sequence," and "contemporary statements" made by the decisionmakers. *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 168–69 (1st Cir. 1998) (quoting *Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 489 (1997)). Here, there is some temporal proximity because she says she filed complaints alleging disability discrimination, harassment, and retaliation in July 2018 and December 2019 and that she was fired in July 2020. She also says that her

supervisors referenced her EEOC activity in their rationale for giving her poor performance evaluations. These allegations are sufficient to support a reasonable inference that there is a connection between her EEOC complaints and being fired. *Cf. Ahern v. Shinseki*, 629 F.3d 49, 58 (1st Cir. 2010) (suggesting that a time gap of several months between the protected activity and adverse act coupled with "some corroborating evidence suggestive of causation" can ground an inference of causal connection). So her retaliation claim survives.

We turn to her last claim under the Rehabilitation Act. To state a plausible hostile work environment claim, Torres must show that (1) "she was disabled," (2) "she was subjected to uninvited harassment," (3) "her employer's conduct was based on her disability," (4) "the conduct was so severe or pervasive that it altered the conditions of her work and created an abusive work environment," and (5) "the harassment was objectively and subjectively offensive." *McDonough v. Donahoe*, 673 F.3d 41, 46 (1st Cir. 2012). As to the third element, the employer's conduct may also be based on retaliation for engaging in protected conduct. *Noviello v.*

*City of Bos.*, 398 F.3d 76, 93 (1st Cir. 2005) ("[A]ctions, directed at a complainant, that stem from a retaliatory animus . . . may be factored into the hostile work environment calculus."). As to the fourth, in evaluating whether a work environment is hostile or abusive, we examine "the severity of the conduct," "its frequency," "and whether it unreasonably interfered with the victim's work performance." *Colón-Fontánez v. Mun. of San Juan*, 660 F.3d 17, 44 (1st Cir. 2011). But we keep in mind that "a litany of petty insults, vindictive behavior, and angry recriminations" are not actionable. *Bhatti v. Trs. of Bos. Univ.*, 659 F.3d 64, 74 (1st Cir. 2011). Employees must tolerate "simple teasing, offhand comments, and isolated incidents (unless extremely serious)." *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 19 (1st Cir. 2002) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998))).

Torres has shown that she is disabled and that the MSC Management harassed her. To determine whether the harassment did, as she says, rise to the level of a "disability-based hostile work environment," Docket No. 6, pg. 7, we must first decide which conduct is based on discriminatory or

retaliatory animus. *See Quiles-Quiles*, 438 F.3d at 7–8 ("[A]n employee claiming harassment must demonstrate that the hostile conduct was directed at him because of a characteristic protected by a federal anti-discrimination statute."). She points to several acts: the MSC Management issued personnel materials that listed different people as her supervisor, rater, and leave approver and did not list her in any position; supervised her even while on military duty; asked her to submit medical documents that she had already submitted; did not copy her on an email that would have informed her that the building where she worked had been freshly painted, causing her to become sick when she arrived; gave her incorrect contact information for Freedom of Information Act requests; told people to stay away from her because it was "already dealing with her"; and refused to give her copies of her personnel documents. She also notes that the CXO's lover filed a false complaint against her. We can reasonably infer that the harassing conduct by the CXO and her supervisor that had been involved in her EEOC complaints was rooted in retaliatory animus because their evaluations of her

referenced her EEOC activity. And because she suggests that the CXO had something to do with his lover filing a false complaint against her, we can reasonably infer that the lover's act was rooted in retaliatory animus as well. Whether this conduct, taken together, rises to the requisite level of severity and pervasiveness is a close call. Most of the conduct she complains of is rude, unprofessional behavior rather than abusive behavior. The three acts that tip the scale in her favor are the false complaint that the CXO's lover filed against her, which led to the CXO recommending that she be fired; not telling her that the building where she worked had been freshly painted, causing to her become sick; and giving her poor performance evaluations based in part on her EEOC complaints. "[F]alse accusations of misconduct can contribute to the creation of a hostile work environment," *Noviello*, 398 F.3d at 93, as can "work sabotage, exclusion, denial of support, and humiliation," *O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st Cir. 2001), and "physically threatening" conduct, *Vega-Colón v. Wyeth Pharms.*, 625 F.3d 22, 32 (1st Cir. 2010). Taking her allegations as true, it is plausible that this

conduct—in the aggregate—amounted to a hostile work environment. This claim, then, also survives the government's motion to dismiss.

### ii.   Title VII of the Civil Rights Act

To state a plausible Title VII retaliation claim, Torres must show that "(1) she engaged in protected conduct under Title VII; (2) she suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity." *Fantini v. Salem State Coll.*, 557 F.3d 22, 33 (1st Cir. 2009) (quoting *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 22 (1st Cir. 2002)). Her claim is fatally flawed because she never engaged in any conduct that Title VII protects. Protected activity is any "action taken to protest or oppose statutorily prohibited discrimination." *Id.* (quoting *Cruz v. Coach Stores Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)). Title VII prohibits employers from discriminating against employees based on "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1)—not disability. So her complaints about disability discrimination, harassment, and retaliation are not actions protesting or opposing conduct that Title VII

prohibits. *Hernández v. Wilkie*, 986 F.3d 98, 103 (1st Cir. 2021) (reporting conduct that does not amount to a Title VII violation, where there is no good-faith belief or reasonable basis to believe that the underlying conduct is a violation, is not protected activity). Because she did not engage in any conduct that Title VII protects, she cannot state a plausible Title VII retaliation claim. *Fleeger v. Principi*, 221 F. App'x 111, 115 (3d Cir. 2007) (unpublished) (stating "Title VII bars race, color, religion, sex, or national origin discrimination; [yet] [plaintiff] complained of discrimination based on her diabetes" and "[f]or this reason, [she] failed to meet the 'protected activity' requirement, and her Title VII retaliation claim was properly dismissed."). We thus dismiss this claim without prejudice.

## II. Conclusion

In sum, the Court **GRANTS in part and DENIES in part** the government's motion to dismiss Torres's complaint (Docket No. 18). We grant it insofar as it seeks to dismiss her retaliation claim under Title VII and her discrimination claim under the Rehabilitation Act. But we deny it insofar as it seeks

to dismiss her failure to accommodate, retaliation, and hostile work environment claims under the Act.

One final point. The only proper defendant under the Rehabilitation Act is the "the head of the department, agency, or unit" at issue. 42 U.S.C. § 2000e-16(c); 29 U.S.C. § 794a (providing that the rights, remedies, and procedures in § 2000e-16(c) of the Civil Rights Act apply to claims brought under the Rehabilitation Act). So the only proper defendant here is Christine E. Wormuth in her official capacity as Secretary of the Army. We thus dismiss Torres's claims against the Department of the Army and the United States of America. To be clear, there are three claims and one defendant left at this juncture: failure to accommodate, retaliation, and hostile work environment under the Rehabilitation Act and Christine E. Wormuth in her official capacity as Secretary of the Army.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 18th day of August 2022.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE