IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MERCEDES TORRES-MEDINA, <br><br> Plaintiff, <br><br> v. <br><br> CHRISTINE E. WORMUTH IN HER OFFICIAL CAPACITY AS SECRETARY OF THE ARMY, THE DEPARTMENT OF THE ARMY, AND THE UNITED STATES OF AMERICA, <br><br> Defendants. | CIV. NO.: 21-1362 (SCC) consolidated with CIV. NO.: 23-1265 (SCC) |

**OPINION AND ORDER**

Pending before the Court is a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Christine E. Wormuth, Secretary of the Army, the Department of the Army, and the United States of America ("Defendants"). *See* Docket No. 118. Plaintiff Mercedes Torres-Medina ("Plaintiff") has opposed the motion. *See* Docket No. 127. For the reasons set forth below, the request is **GRANTED in part and DENIED in part.**

## I. BACKGROUND

### a. RELEVANT FACTUAL BACKGROUND

Plaintiff worked for the Army as a civilian from 1995 to 2020.  Docket No. 110, pg. 3.  Plaintiff is disabled and "suffers from several medical conditions, including two cardiovascular accidents (CVAs or strokes), asthma, rheumatoid arthritis, insomnia, PTSD, depression, and high blood pressure."  *Id.* at pg. 2.  Due to her strokes, Plaintiff "suffers from mobility problems, no strength on the left side of her body, and lost eyesight in her left eye." *Id.* at pg. 3.

During her employment, Plaintiff filed numerous complaints against her employer with the Equal Employment Opportunity Commission ("EEOC").  *Id.* at pg. 4.  In 2008, Plaintiff filed complaint ARUSAR08MAY01869 ("Claim 1869").[1]  *Id.*  In 2019, Plaintiff filed complaint, ARUSAR19AUG03048 ("Claim 3048").  Docket No. 118-1, pg. 1.  Lastly, in 2020, Plaintiff filed complaint, ARUSAR20JUL02269 ("Claim 2269").  *Id.*  In 2015, Plaintiff

---

[1] This complaint resulted in a Negotiated Settlement Agreement ("NSA"). Docket No. 110, pg. 4.  The complaint was reopened in 2018, following breaches to the NSA.  *Id.*

also filed a civil lawsuit alleging violations of the Rehabilitation Act and Title VII of the Civil Rights Act of 1964. *Id.* at pg. 4; *see Torres-Medina v. Dep't of the Army*, No. 15-2085, Docket No. 1 (D.P.R. 2015).[2]

The allegations that led to this lawsuit began in March 2019, when Plaintiff was transferred to an office where she would be supervised by individuals involved in her administrative complaints.[3] Docket No. 110, pg. 5. Although Plaintiff requested reassignment to her prior supervisor (as a "reasonable accommodation"), her request was denied. *Id.* at pgs. 5–6. After her transfer, Plaintiff received a poor performance evaluation for the April 2019 to March 2020 period, despite having consistently received positive evaluations previously. *Id.* at pg. 6. The evaluations indirectly referenced her "prior EEO/EEOC [complaints] as

---

[2] After a jury trial, judgment was entered in favor of the Defendants. *Torres-Medina v. Dep't of the Army*, No. 15-2085, Docket No. 115 (D.P.R. 2018).

[3] One of the supervisors was Chief Executive Officer Julio Aponte Rivera ("CXO Aponte Rivera"). Docket No. 110, pg. 3. As Plaintiff alleges, CXO Aponte Rivera was involved in an affair with Senior Budget Analyst Sadilka Ferrao ("Analyst Ferrao"). *Id.* at pg. 7. Plaintiff was aware of the affair and the participants believed that she disclosed it to others in the workspace. *Id.* at pgs. 7–8.

one of the reasons for the poor evaluation," and Plaintiff was not given counseling to correct her performance. *Id.*

Plaintiff also alleges a larger pattern of workplace harassment that caused her to suffer a PTSD crisis, during which she stated that she would kill Human Resources Officer Jose Ruíz Espada ("HRO Ruíz Espada") if she saw him. *Id.* at pgs. 8–9. As a result, Plaintiff was given a 14-day suspension. *Id.* at pgs. 9–10. While serving her suspension, another investigation against Plaintiff was ordered based on a complaint filed by Senior Budget Analyst Sadilka Ferrao ("Analyst Ferrao") accusing Plaintiff of "cursing and using offensive and/or indecent language in the workplace, and also of using military personnel to run errands." *Id.* at pg. 10. Based on the results of the investigation, CXO Aponte Rivera recommended Plaintiff's removal from employment. *Id.* Plaintiff was then terminated on July 22, 2020. *Id.* at pg. 12.

### b. PROCEDURAL HISTORY

On August 8, 2021, Plaintiff sued Defendants for these allegations under federal and Puerto Rico law. Docket No. 1, pgs. 8–11. Shortly thereafter, Plaintiff filed an Amended Complaint alleging disability discrimination, failure to accommodate, hostile work environment, and retaliation

under the Rehabilitation Act, as well as retaliation under Title VII of the Civil Rights Act. Docket No. 6, pgs. 9–10. Defendants moved to dismiss all claims in the Amended Complaint. Docket No. 18. This Court dismissed two of the claims, but allowed Plaintiff's failure to accommodate, hostile work environment, and retaliation claims under the Rehabilitation Act to proceed. Docket 26, pgs. 20–21. Defendants then moved for judgment on the pleadings, centered on the factual sufficiency and administrative exhaustion of Plaintiff's claims. Docket No. 41. The Court denied the motion and again allowed the three Rehabilitation Act claims to proceed. Docket No. 58, pg. 22.

On May 23, 2023, Plaintiff brought a second case related to the alleged discrimination, retaliation, and harassment she experienced during her employment. *See Torres-Medina v. Wormuth*, No. 23-1265, Docket No. 1 (D.P.R. 2023).[4] Given the shared factual foundations of the two cases, the Court granted Plaintiff's motion to consolidate. Docket No. 104. The Court then ordered Plaintiff to file a Consolidated Amended Complaint. Docket No. 107. Plaintiff

---

[4] Hereinafter: Civ. No. 23-1265.

did so, pleading four causes of action: disability discrimination, retaliation, and hostile work environment under the Rehabilitation Act, and retaliation under Title VII of the Civil Rights Act.  Docket No. 110.  The Court identifies a fifth claim for failure to accommodate under the Rehabilitation Act.  *Id.* at pg. 6 ("The 1st MSC management denied [Plaintiff's] reasonable accommodation requests alleging that it had no legal duty to change [Plaintiff's] supervisor as a form of reasonable accommodation.").

Defendants have now filed the instant motion to dismiss, arguing that Plaintiff failed to administratively exhaust her claims, which are also factually deficient.  Docket No. 118, pg. 4.  Plaintiff responded, arguing that Defendants' sufficiency arguments were already addressed by this Court, *see* Docket Nos. 26, 58, and the failure to exhaust defense has been waived.  Docket No. 127, pgs. 7–8.[5]

---

[5] "An amended complaint supersedes the original complaint, and facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader."  *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003).  Further, "a defendant who fails to raise exhaustion of administrative remedies in response to a previous complaint does not waive the affirmative defense so long as the defense is timely raised in response to a subsequently amended complaint."  *Vélez-Arocho v. Jardín*, No. Civ. 04-1093, 2005 WL 1640680 (D.P.R. May 24, 2005) (citing *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) ("Because a plaintiff's new

## II.  STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a plaintiff must plead "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 16 F.4th 538, 546 (1st Cir. 2021) (quoting *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)).  This means that the complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

To make that determination, the Court embarks on a two-step analysis.  *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).  "First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited)."  *Rodríguez-Reyes v. Molina-*

---

complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses.")).  Following the consolidation of the two cases, the Defendants brought this new motion to dismiss, in which they properly raise the failure-to-exhaust defense as it applies to the claims contained in the Consolidated Amended Complaint.  Accordingly, the Court will consider the administrative exhaustion of Plaintiff's claims.

*Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013).  In conducting this exercise, the Court must "accept as true all well-pleaded facts set forth in a plaintiff's complaint and draw all reasonable inferences therefrom to his behoof."  *Burt v. Bd. of Trs. of Univ. of Rhode Island*, 84 F.4th 42, 50 (1st Cir. 2023).  However, the Court will not credit legal conclusions nor "factual allegations that are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture.'"  *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 34 (1st Cir. 2022) (quoting *Tambone*, 597 F.3d at 442).  Second, the Court then "consider[s] whether the winnowed residue of factual allegations gives rise to a plausible claim to relief."  *Rodríguez-Reyes*, 711 F.3d at 53.

### III. ANALYSIS

#### a. SUFFICIENCY OF THE CONSOLIDATED AMENDED COMPLAINT

Defendants argue that the disability discrimination and Title VII claims should be dismissed, as the Consolidated Amended Complaint fails to include any additional allegations warranting a deviation from the Court's previous

dismissal of the two claims.  Docket No. 118, pg. 4.[6]  Next,
Defendants argue that Plaintiff has failed to satisfy the
causation element of her disability discrimination, retaliation,
and hostile work environment claims.  *Id.* at pg. 5.  Lastly,
Defendants argue that the Title VII claim fails because it does
not involve conduct protected by the statute, and the hostile
work environment claim fails for "fall[ing] well short of
establishing an objectively hostile work environment."  *Id.* at
pgs. 5–6.

### i. DISABILITY DISCRIMINATION UNDER THE REHABILITATION ACT

To state a plausible disability discrimination claim
under the Rehabilitation Act, Plaintiff must show that "(1) she
was disabled within the meaning of the statute; (2) she was
qualified to perform the essential functions of the job, either
with or without a reasonable accommodation; and (3) the
employer took adverse action against her because of the

---

[6] Prior to consolidation of the two cases, this Court ruled on Defendants'
motion to dismiss.  *See* Docket No. 26.  Upon review of the Consolidated
Amended Complaint, Docket No. 110, this Court finds that the additional
facts alleged do not alter the Court's prior rulings on the sufficiency of all
five claims.  Accordingly, the analysis to follow will largely mirror that of
the Opinion and Order located at Docket No. 26.

disability." *Serrano-Colón v. United States Dep't of Homeland Sec.*, 121 F.4th 259, 277 (1st Cir. 2024) (citing *Ríos-Jiménez v. Principi*, 520 F.3d 31, 41 (1st Cir. 2008)).

First, a person is disabled if she has "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or is "regarded as having such an impairment." *Mancini v. City of Providence*, 909 F.3d 32, 39 (1st Cir. 2018) (internal citations omitted). A physical impairment is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems." *Id.* at 40 (citing 29 C.F.R. § 1630.2(h)). Second, a person is qualified for her job if she can perform its essential functions with or without a reasonable accommodation. *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 25 (1st Cir. 2001). Third, the causation element requires demonstration that the employer's adverse action was taken "in whole or in part, because of her disability." *López-López v. Robinson School*, 958 F.3d 96, 104 (1st Cir. 2020). One way Plaintiff may prove the connection between the adverse action and her disability is by showing that her employer frequently mentioned, harassed, or ridiculed her because of her disability. *Quiles-Quiles v. Henderson*, 439 F.3d

1, 8 (1st Cir. 2006).

Plaintiff is disabled. The Consolidated Amended Complaint clearly lists Plaintiff's various medical conditions and physical ailments, for which she has been the recipient of accommodations throughout her tenure. Docket No. 110, pgs. 2–3. Further, the Court can reasonably infer that Plaintiff was qualified to perform the essential functions of her job. Plaintiff was employed by the Army for over twenty years, during which she "always had good or excellent performance evaluations." *Id.* at pg. 6.

The fatal flaw arises as to the causation element. The Consolidated Amended Complaint provides no allegations which support a reasonable inference that Plaintiff experienced adverse actions from her employer because of her disability. As this Court noted in its prior decision, Plaintiff's allegations may demonstrate retaliatory animus due to her filing of EEOC complaints or believed disclosure of the CXO's affair, *see* Docket No. 26, pg. 9, but nowhere does this Court identify allegations which indicate that the employer's behavior was based on discriminatory animus. Accordingly, the disability discrimination claim under the Rehabilitation Act is dismissed.

### ii. FAILURE TO ACCOMMODATE UNDER THE REHABILITATION ACT

As with the disability discrimination claim, Plaintiff must show that she was disabled and "qualified to perform the essential functions of the job, either with or without a reasonable accommodation." *Serrano-Colón*, 121 F.4th at 277. Plaintiff must also show that her "employer, despite knowing about [her] disability, did not acquiesce to [her] request for a reasonable accommodation." *Id.* Plaintiff must show not only that "(1) the proposed accommodation would enable her to perform the essential functions of her job, but also that, (2) at least on the face of things, it is feasible for the employer under the circumstances." *Echevarría v. AstraZeneca Pharm. LP*, 856 F.3d 119, 127 (1st Cir. 2017) (citing *Reed v. Lepage -Bakeries, Inc.*, 244 F.3d 254, 259 (1st Cir. 2001)). The request "must be sufficiently direct and specific, and it must explain how the accommodation is linked to plaintiff's disability." *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012). "The reasonableness of any proposed accommodation, including its feasibility, must be assessed on a case-by-case basis." *Trahan v. Wayfair Me., LLC*, 957 F.3d 54, 65 (1st Cir. 2020).

As previously established, Plaintiff is disabled and was qualified to perform the essential functions of her job. The Court can reasonably infer that Plaintiff's employers had notice that the accommodation was linked to her disability, given their request for medical documentation. Docket No. 110, pg. 8. The Court can also infer that Plaintiff's depression and PTSD would likely be exacerbated by placing her under the supervision of individuals involved in her complaints, causing her to struggle to perform the essential functions of her job. *Id.* at pgs. 5–6. Since the situation might be remedied by simply reassigning her to her prior supervisor, the accommodation appears to be feasible at this stage of the proceedings. *Id.* at pg. 5. Accordingly, the failure to accommodate claim survives at this juncture.

### iii. RETALIATION UNDER THE REHABILITATION ACT

To prevail on her retaliation claim under the Rehabilitation Act, Plaintiff must show that she: "(1) was engaged in protected conduct; (2) suffered an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse action." *Rivera-Velázquez v. Regan*, 102 F.4th 1, 12–13 (1st Cir. 2024).

Protected conduct includes filing a complaint that opposes an action that the Rehabilitation Act prohibits, such as disability discrimination. *Quiles-Quiles*, 439 F.3d at 8; *see also Rae v. Woburn Public Schools*, 113 F.4th 86, 100 (1st Cir. 2024) ("[R]eporting discriminatory conduct to the employer's HR department or an administrative agency like [the EEOC] constitutes protected activity."). "An 'adverse employment action' is one that 'affect[s] employment or alter[s] the conditions of the workplace." *Ríos v. Centerra Group* LLC, 106 F.4th 101, 112 (1st Cir. 2024) (quoting *Morales-Vallellanes v. Potter*, 605 F.3d 27, 35 (1st Cir. 2010)). In this context, an adverse action "is one that might well dissuade a reasonable person from making or supporting a charge of discrimination." *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 41 (1st Cir. 2012).

The causal connection between the protected conduct and the adverse action may be demonstrated "by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action." *Rae*, 113 F.4th at 101. The Court may also consider other factors, such as, "the historical background of the decision; the specific sequence of events leading up to the challenged decision;

departures from the normal procedural sequence; [and] any contemporary statements [made] by members of the decisionmaking body." *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 168–69 (1st Cir. 1998) (quoting *Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 489 (1997) (internal quotation marks omitted)).

Plaintiff has demonstrated that she engaged in protected conduct, namely, the filing of complaints related to alleged disability discrimination. Docket No. 110, pg. 4. Plaintiff has also demonstrated that she was subject to adverse action through the termination of her employment. *Id.* at pg. 12. A causal connection between the protected conduct and adverse action can be inferred from the temporal proximity between Plaintiff's filing of EEO complaints in 2018, 2019, and 2020 and her termination in July 2020.[7] *Id.* at pgs. 4, 12. Further, Plaintiff alleges that HRO Ruíz Espada and CXO Aponte Rivera referenced her EEO/EEOC activity in her poor performance evaluations. *Id.* at pg. 6.

---

[7] Claim 1869, originally filed in 2008, was reopened in 2018 following the Agency's breach of the NSA. Docket No. 110, pg. 4. Plaintiff filed Claim 3048 in 2019 and Claim 2269 in 2020. Docket No. 118-1, pg. 1.

Accordingly, Plaintiff's retaliation claim under the Rehabilitation Act may proceed.

### iv. HOSTILE WORK ENVIRONMENT UNDER THE REHABILITATION ACT

To state a plausible hostile work environment claim under the Rehabilitation Act, Plaintiff must show that (1) "she was disabled as defined under the Rehabilitation Act, (2) she was subjected to uninvited harassment, (3) her employer's conduct was based on her disability, (4) the conduct was so severe or pervasive that it altered the conditions of her work and created an abusive work environment, and (5) the harassment was objectively and subjectively offensive." *McDonough v. Donahoe*, 673 F.3d 41, 46 (1st Cir. 2012). As to the third element, the employer's conduct may also be based on retaliatory animus. *Alvarado v. Donahoe*, 687 F.3d 453, 459 (1st Cir. 2012) ("[A]lleged retaliatory actions against an employee must bear a causal connection to some protected conduct in order to establish a prima facie claim that rests on a hostile work environment theory."). In evaluating the claim, the Court will consider the "totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it
unreasonably interfere[d] with an employee's work
performance.'" *Ríos*, 106 F.4th at 116 (quoting *Brader v. Biogen
Inc.*, 983 F.3d 39, 59 (1st Cir. 2020)).

Plaintiff has demonstrated that she is disabled and that
she was subjected to harassment from her employer. In its
prior decision, this Court sifted through Plaintiff's numerous
allegations of harassment—all of which are likewise included
in the Consolidated Amended Complaint—and identified the
following acts as "tip[ping] the scale" towards the level of
severity and pervasiveness necessary for a hostile work
environment claim: the false complaint filed against Plaintiff
by Analyst Ferrao, which led to her termination;
management's failure to advise Plaintiff that the building
where she worked had been freshly painted, causing her to
become ill; and HRO Ruíz Espada and CXO Aponte Rivera's
poor performance evaluations, based in part on her EEOC
complaints.[8] Docket No. 26, pg. 18; *see also* Docket No. 110,

---

[8] The Court considered the following allegations in addition to those
which "tip[ped] the scales": management issued personnel materials that
listed different people as her supervisor, rater, and leave approver and did
not list her in any position; supervised her even while not on active
military duty; asked her to submit medical documents that she had

pgs. 6, 9–10.  Based on this finding, the hostile work environment claim survived the prior motion to dismiss.

The Consolidated Amended Complaint adds several allegations of harassment, including: HRO Ruíz Espada's denial of Plaintiff's sick leave request; management's failure to copy her on an email distribution for an EO/EEO Survey; HRO Ruíz Espada's denial of Plaintiff's Premium Paid time, despite having been previously approved for the same; and management's email to Plaintiff advising her to refrain from using her government laptop while serving her suspension. Docket No. 110, pgs. 9–10.  These additional allegations further "tip the scale" in favor of the plausibility of a hostile work environment.    Accordingly, the hostile work environment claim survives the motion to dismiss.

### v.  RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT

Lastly, to state a plausible Title VII retaliation claim, a plaintiff must prove that "(1) they engaged in protected activity under Title VII, (2) they suffered an adverse

---

already submitted; gave her incorrect contact information for Freedom of Information Act requests; told people to stay away from her because it was "already dealing with her"; and refused to give her copies of her personnel files.  Docket No. 26, pg. 17.

employment action, and (3) the adverse employment action was casually connected to the protected activity." *Neece v. City of Chicopee*, 106 F.4th 83, 94 (1st Cir. 2024) (citing *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 46 (1st Cir. 2010)). In this context, protected activity is any "action taken to protest or oppose statutorily prohibited discrimination." *Fantini v. Salem State Coll.*, 557 F.3d 22, 33 (1st Cir. 2009) (citing 42 U.S.C. § 2000e–3). Title VII prohibits employers from discriminating against employees based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

In our prior decision, we noted that Plaintiff complains of *disability* discrimination, harassment, and retaliation. Docket No. 26, pg. 19 (emphasis added). We dismissed the claim, reasoning that "[b]ecause [Plaintiff] did not engage in any conduct that Title VII protects, she cannot state a plausible Title VII retaliation claim." *Id.* at pg. 20 (citing *Fleeger v. Principi*, 221 F. App'x 111, 115 (3d Cir. 2007) ("Title VII bars race, color, religion, sex, or national origin discrimination; [plaintiff] complained of discrimination based on her diabetes…For this reason, [plaintiff] failed to meet the 'protected activity' requirement, and her Title VII retaliation claim was properly dismissed by the District Court.")). The

Consolidated Amended Complaint fails to provide any additional allegations which cure this fatal defect. Thus, the Court again dismiss the Title VII claim.

### b. EXHAUSTION OF ADMINISTRATIVE PROCEDURES

The Rehabilitation Act prohibits "discrimination on the basis of disability against otherwise qualified individuals working for an executive agency or a program receiving federal funds," and prescribes "administrative and judicial recourse for federal employees who filed a complaint of disability-based employment discrimination and were aggrieved by either the final disposition of their complaint or the failure to take final action." *Vázquez-Rivera v. Figueroa*, 759 F.3d 44, 47 (1st Cir. 2014) (internal citations omitted). This administrative process requires the aggrieved party to "initiate contact with an EEOC counselor within 45 days of the allegedly discriminatory act." *González Tomasini v. United States Postal Serv.*, 594 F. Supp. 3d 355, 390 (D.P.R. 2022). Once a final decision on the administrative complaint is issued, "the aggrieved party may file an appeal pursuant to section 1614.110(a), or may choose to file a civil action in federal court." *Reynoso v. DeJoy*, 658 F.Supp.3d 10, 17 (D.P.R. 2023) (citing 29 C.F.R. §§ 1614.401, 1614.407). If the complainant

pursues the latter option, it must file the lawsuit "'[w]ithin 90 days of receipt of the agency['s] final action on an individual […] complaint.'" *Id.* (quoting 29 C.F.R. § 1614.407(a)).

Plaintiff has fulfilled the timeliness requirements for both of her administrative claims.[9]  To begin, the discriminatory action prompting Claim 2269 occurred on July 22, 2020.  Docket No. 118-5, pg. 1.  Plaintiff contacted an EEO official on July 27, 2020, within the 45-day period.  *Id.*  After receiving the Notice of Right to File a Formal Complaint of Discrimination, Plaintiff filed her complaint on November 3, 2020.  Docket No. 118-3, pg. 1.  The Department of the Army issued its Final Decision on July 8, 2021, in which it found

---

[9] The Consolidated Amended Complaint is devoid of any facts detailing Plaintiff's exhaustion of administrative remedies.  The only reference the Court identifies is Plaintiff's statement that "[t]hroughout the years, [Plaintiff] filed several discrimination and retaliation complaints against the Agency," with a reference to Claim 1869 as one such example.  Docket No. 110, pg. 4.  However, in support of its motion to dismiss, Defendant attaches documentation of the administrative process for each of the three claims as exhibits.  Docket No. 118-1-6.  Further, in reply to the motion to dismiss, Plaintiff references both claims explicitly and cites to the Defendant's exhibits.  Docket No. 127, pgs. 9–13.  Thus, although courts in this District have dismissed claims "when a complaint contains no allegations regarding the filing of an EEOC charge," the evidence thus presented proves the filing and procedure of Plaintiff's administrative complaints.  *Díaz-Zayas v. Mun. of Guaynabo*, 600 F.Supp.3d 184, 198 (D.P.R. 2022).

"that the Complainant was not subjected to discrimination based upon the evidence in the case file." Docket No. 53-2, pgs. 1, 18. Plaintiff then filed the instant lawsuit on August 8, 2021, within the 90-day period. Docket No. 1. Accordingly, Plaintiff has satisfied the timing requirements for Claim 2269.

Next, the discriminatory action prompting Claim 3048 occurred on August 9, 2019. Docket No. 118-2, pg. 1. Plaintiff contacted an EEO official on August 14, 2019, within the 45-day limitation. *Id.* Following the receipt of the Notice of Right to File a Formal Complaint of Discrimination, Plaintiff filed her complaint on December 10, 2019. Civ. No. 23-1265, Docket No. 1-2, pg. 1.[10] The complaint was amended three times, on February 18, 2020, April 23, 2020, and May 19, 2020. *Id.*; Docket No. 118-1, pg. 1. The Department of the Army issued its Final Action on February 22, 2023, in which it

---

[10] As this Court has noted, although Plaintiff has filed numerous administrative complaints, the Consolidated Amended Complaint does not provide facts detailing Plaintiff's exhaustion of administrative remedies. Drawing all reasonable inferences in Plaintiff's favor as required at this stage, namely the Consolidated Amended Complaint's broad reference to the filing of "several discrimination and retaliation complaints against the Agency" and Plaintiff's reply to the motion to dismiss referencing Claim 2269 and Claim 3048, this Court will incorporate and consider Docket No. 1-2 from Civ. No. 23-1265 for reasons of the timeliness issue. Docket No. 110, pg. 4.

adopted the Administrative Judge's decision granting summary judgment in favor of the Agency.  Civ. No. 23-1265, Docket No. 1-2, pg. 2.  Plaintiff then filed a civil lawsuit on May 23, 2023, within the 90 day period.  *Id.*, Docket No. 1.  Accordingly, Plaintiff has abided by the applicable timing requirements for both claims.

"Administrative exhaustion also requires satisfaction of a 'presentment' requirement."  *Montalvo Figueroa v. DNA Auto Corp.*, 414 F. Supp. 3d 213, 229 (D.P.R. 2019).  "Courts generally approach the issue of whether a judicial complaint comes within the parameters of an administrative charge using one of two tests."  *Id.* at 236.  "Some courts limit the scope of the judicial complaint to 'the scope of the EEOC investigation which can reasonably be expected to grow out of the charge.'"  *Id.* (quoting *Sánchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).  "Other courts hold that 'the judicial complaint . . . may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC.'"  *Id.* (quoting *Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973)).  The First Circuit has employed both tests and generally does not

require that a judicial complaint "mirror" the administrative complaint that preceded it. *Id.* at 236–37. As such, exhaustion is not necessarily defeated where a district court action evolves beyond the four corners of an administrative complaint. *See Jorge v. Rumsfeld*, 404 F.3d 556, 565 (1st Cir. 2005); *Díaz-Zayas v. Mun. of Guaynabo*, 600 F. Supp. 3d 184, 197 (D.P.R. 2022).

Presently, Plaintiff has three live Rehabilitation Act claims: failure to accommodate, retaliation, and hostile work environment. As such, the exhaustion of only those surviving claims will be reviewed by the Court. To begin, this Court has previously made clear that Claim 2269 "expressly included a reasonable accommodation claim for denying [Plaintiff's] request to be returned to her prior supervisor." Docket No. 58, pg. 8. In fact, the Department of the Army's Final Decision explicitly references the claim, noting that Plaintiff provided a "Denial of Accommodation Request with her declaration." Docket No. 53-2, pg. 7. As such, the failure to accommodate claim properly comes within the parameters of the administrative charge.

Next, Plaintiff's retaliation claim based on her termination for filing EEO complaints mirrors the allegations

in both Claim 2269 and Claim 3048.  Claim 2269 expressly references "Reprisal (Previous Protected EEO Activity)" and illustrates the investigation and procedure leading to her termination.  Docket No. 118-3, pgs. 1–2.  Likewise, Claim 3048 references "Reprisal (Previous Protected EEO Activity)" and provides allegations related to her suspension, the AR 15-6 investigation, and CXO Aponte Rivera's "Notice of Proposed Removal."  Docket No. 118-1, pg. 2.  Further, in the EEO Counselor's Report for both claims, Plaintiff marked "reprisal" as a basis for the complaint and provided the case numbers for her prior complaints.  Docket No. 118-2, pg. 2; Docket No. 118-5, pg. 2.[11]  Accordingly, Plaintiff's retaliation claim has been properly exhausted through Claim 2269 and Claim 3048.

Lastly, Plaintiff's hostile work environment claim is supported by a mix of facts alleged in Claim 2269 and Claim 3048.  For example, Plaintiff's allegations as to her poor performance evaluation and the painting of Plaintiff's

---

[11] In the report for Claim 2269, Plaintiff identified Claim 3048 and Claim 1869.  Docket No. 118-5 pg. 2.  In the report for Claim 3048, Plaintiff identified Claim 1869.  Docket No. 118-2, pg. 2.

workspace without notice are both included in Claim 3048.
Docket No. 118-1, pgs. 1–2.  Claim 2269 contains allegations
related to HRO Ruíz Espada's instruction to "stay away" from
Plaintiff and the investigation which resulted from Analyst
Ferrao's false complaint against her.  Docket No. 53-2, pg. 6;
Docket No. 118-3, pg. 2.  In sum, the factual allegations
necessary to support Plaintiff's hostile work environment
claim have been properly exhausted through Claim 2269 and
Claim 3048.

## IV. CONCLUSION

In light of the above, Defendants' motion to dismiss for
failure to state a claim upon which relief can be granted at
Docket No. 118 is **DENIED in part and GRANTED in part.**
IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of September 2025.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE